UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICARDO H. RIVERA**<br>111 Kelso Boulevard<br>Madison, Alabama 35756<br><br>*Plaintiff*,<br><br>v.<br><br>**MARK F. AVERILL,**<br>**ACTING SECRETARY OF THE ARMY**,<br>in his official capacity,<br>101 Army Pentagon,<br>Washington, DC 20310,<br><br>**UNITED STATES DEPARTMENT OF**<br>**THE ARMY**<br>101 Army Pentagon<br>Washington, DC 20310, and<br><br>**ARMY BOARD FOR THE CORRECTION**<br>**OF MILITARY RECORDS**<br>251 18th Street South, Suite 385<br>Arlington, VA 22202<br><br>*Defendants*. | Case No. _____ |

## COMPLAINT

For his complaint in the above-captioned matter, Plaintiff, Specialist (Ret.) Ricardo Rivera ("SPC Rivera"), a veteran of the United States Army, states as follows:

### I.    INTRODUCTION

**A.    SPC Rivera's Military Service**

1. SPC Rivera was deployed to a warzone twice between 2002 and 2006 for a total of approximately 21 months as a part of Operation Iraqi Freedom.

1

2. During SPC Rivera's two tours of duty in Iraq, he was exposed to repeated mortar fire on his base. SPC Rivera experienced constant anxiety and fear relating to the incoming mortar fire. SPC Rivera was also part of a vehicular convoy gun team, and he anticipated death every time he went out on the road; he was repeatedly shot at and targeted by rocket fire, and encountered Improvised Explosive Devices ("IEDs"), multiple times.

3. As a result of these combat stressors, SPC Rivera has exhibited various PTSD related mental health and physical issues since returning from Iraq, including: depression, an inability to cope in social settings, intrusive and recurrent memories, nightmares of explosions and dead bodies, and an inability to sleep.

**B.     Army and VA Diagnoses**

4. On May 31, 2006, SPC Rivera was honorably released from active duty by reason of completion of required active service. He was transferred to control of the U.S. Army Reserve Control Group.

5. SPC Rivera's records contain a Psychiatric Medical Evaluation Board Summary from the Fox Army Medical Center dated September 17, 2010 (the "Summary"). The summary shows a diagnosis of: (a) chronic post-traumatic stress disorder ("PTSD"), in the line of duty, with an onset of 2003; (b) major depressive disorder, in the line of duty, with an onset of 2003; and (c) panic disorder with agoraphobia, in the line of duty, with an onset of 2005.

6. On October 4, 2010, a Physical Evaluation Board (the "PEB") found SPC Rivera physically unfit by reason of PTSD attributed to combat stressors encountered during his tour of service. The PEB recommended a combined disability percentage of 70% and that SPC Rivera be placed on the Temporary Disability Retirement List (the "TDRL"). The PEB's recommended findings included that SPC Rivera's PTSD was a disability received in the line of duty as a direct

result of armed conflict or caused by an instrumentality of war and that the disability resulted from a combat related injury as defined in 26 U.S.C. § 104.

7. On October 14, 2010, the U.S. Army Physical Disability Agency (the "USAPDA") placed SPC Rivera on the TDRL.

8. On August 26, 2011, the VA issued a rating decision granting SPC Rivera VA disability benefits of 30% based on his PTSD.

9. On September 29, 2011, an informal TDRL PEB recommended that SPC Rivera be retired permanently retired due to his PTSD.

10. On November 1, 2011, the USAPDA permanently retired SPC Rivera.

**C.    SPC Rivera's Request for CRSC**

11. Prior to his permanent retirement, on October 3, 2011, SPC Rivera submitted a CRSC claim to the CRSC branch of the U.S. Army Human Resources Command (the "CRSC Branch") based on his PTSD.

12. On October 21, 2011, the CRSC Branch denied SPC Rivera's claim, finding it was unable to verify his disability as combat-related.

13. SPC Rivera appealed the CRSC Branch's denial. On December 14, 2011, the CRSC Branch denied his appeal, again finding that it was unable to verify his disabilities were combat related.

14. SPC Rivera appealed the CRSC Branch's denial of his first appeal. On February 27, 2012, the CRSC Branch denied SPC Rivera's second appeal, finding that it was unable to overturn previous adjudications.

15. SPC Rivera reapplied for CRSC. On February 8, 2019, the CRSC Branch notified SPC Rivera that his second application could not be considered because his reconsideration appeal was already final.

16. On or about March 19, 2020, SPC Rivera initially submitted an Application for Correction of Military Record, Form DD 149, to the Army Board for the Correction of Military Records (the "ABCMR"); after repeated exchanges with representatives at the Army Review Boards Agency ("ARBA") who were unable to confirm that the physical mailed application packet was received, SPC Rivera resubmitted the application to ARBA electronically on August 3, 2020.

17. On February 9, 2022, the ABCMR informed SPC Rivera that "relief was not warranted" and that SPC Rivera's record "lacked sufficient details to show a causal event," so the ABCMR was therefore "unable to verify his disabilities as combat-related for his left shoulder strain and PTSD."

18. On August 31, 2022, however, the ABCMR sent SPC Rivera a letter indicating that while the ABCMR "unanimously recommended denial relief of your request," the "Deputy Assistant Secretary of the Army (Review Boards) found there is sufficient evidence to grant partial relief" after reviewing the findings, conclusions, and recommendations of the ABCMR (the "Partial Relief Letter").

19. SPC Rivera sought clarification from ARBA on several occasions of the Partial Relief Letter and what it might mean for the award of benefits. On July 25, 2023, SPC Rivera received an email from Les Plooster, an Operations Officer (Preboard) at the ABCMR, saying that the partial relief approved was to direct Human Resources Command ("HRC") to reconsider the claim for CRSC based on PTSD. Mr. Plooster relayed that "after completing that review, HRC was unable to find a basis for granting CRSC based on PTSD and no correction will be made."

20. On August 22, 2023, SPC Rivera, for the first time represented by counsel, submitted an Application for Correction of Military Record Form DD 149 (the "Second ABCMR Application") to the ABCMR.

21.  On February 16, 2024, the ABCMR transmitted to SPC Rivera an Advisory Opinion from the U.S. Army Human Resources Command (the "Advisory Opinion"). The Advisory Opinion found that SPC Rivera had not submitted official military documentation that showed evidence of his direct and personal exposure to armed conflict. The Advisory Opinion further informed SPC Rivera that, for mental health conditions, official military documentation includes wartime chain of command endorsements of First Sergeant/Company Commander or higher which confirm exposure to armed conflict. The Advisory Opinion gave SPC Rivera until March 4, 2024, to respond.

22.  On March 4, 2024, SPC Rivera, by counsel, submitted a response to the Advisory Opinion. SPC Rivera's March 4, 2024 response to the Advisory Opinion (and attachments thereto) (the "Advisory Opinion Response") is attached as **Exhibit A**. Proof of its transmission to the ABCMR on March 4, 2024, is attached as **Exhibit B**. For the first time, SPC Rivera included in his response a statement of Major (Ret.) Stephanie JG Royal ("MAJ Royal"). MAJ Royal was in SPC Rivera's direct wartime chain of command; she served as the Battalion Adjutant (S-1) and then as the Company Commander for SPC Rivera's unit. MAJ Royal's statement provided objective evidence documenting SPC Rivera's exposure to armed conflict, which corroborates both SPC Rivera's personal statement and Sergeant Luidor Lamour's ("SGT Lamour") witness statement[1] that were included in the Second ABCMR Application.

23.  MAJ Royal stated: "[SPC] Rivera exhibited unwavering dedication and exceptional bravery during his service in Iraq from 2003-2005 on two separate deployments. Deploying as a Military HR Specialist, [SPC] Rivera participated in weekly convoys to and from Baghdad,

---

[1] SGT Lamour served with SPC Rivera in HHC, 51st Signal Battalion in Iraq from April 2004 to April 2004 and again from February 2005 to November 2005. His witness statement recounts their shared experiences on convoys and patrols through the combat zone that often resulted in them being targeted and fired upon by enemy combatants.

5

Baghdad International Airport (BIAP), Camp Victory, Anaconda, Balad and other FOBS and locations in theater. During these convoys we consistently incurred enemy gun fire and consistently encountered Improvised Explosive Devices (IEDs), which falls squarely within the criteria outlined in 10 USC 1413a."

24. The Advisory Opinion Response further attached a recent ABCMR decision which gave special emphasis to the PEB determination and agreed that "but for the applicant's time in combat, it was more likely than not that the applicant would not have been diagnosed with PTSD; therefore a causal relationship does exist between his time in combat and the subsequent diagnosis of PTSD." Army Board for Correction of Military Records Record of Proceedings under Docket Number AR20230008456 with a Board Date of December 1, 2023, p. 7. The response further noted that in this decision, the record included the concession that the "United States recognized it was not clear from [an earlier] ABCMR decision or the CRSC procedures and criteria where the commander or first sergeant statements were a requirement was derived." *Id.*.

25. On August 1, 2024, the ABCMR issued its final decision denying SPC Rivera's request for reconsideration of his CRSC denial (the "Final Decision"). The Final Decision erroneously states that SPC Rivera "did not respond" to the Advisory Opinion and "ha[d] not submitted official military documentation that shows evidence of his direct and personal exposure to armed conflict." As shown in Exhibits A and B, SPC Rivera timely responded to the Advisory Opinion on March 4, 2024. In doing so, he provided official military documentation by way of MAJ Royal's statement, which conclusively establishes SPC Rivera's direct and personal exposure to armed conflict.

26. When it issued the Final Decision, the ABCMR did not consider the Advisory Opinion Response. Importantly, the Final Decision failed to acknowledge MAJ Royal's statement,

which constituted objective military documentation of SPC Rivera's direct and personal exposure to armed conflict. The decision further did not address the similar ABCMR decision included as an exhibit to the response to the advisory opinion. In its Final Decision, the ABCMR found that SPC Rivera was "ineligible for [CRSC] . . . [because] they were unable to find evidence to show the applicant was personally exposed to armed conflict as required by law."

## II.     NATURE OF THE ACTION

27. This is an action under 5 U.S.C. § 706 of the Administrative Procedure Act (the "APA") for judicial review of the decision of the ABCMR denying SPC Rivera's application for Combat-Related Special Compensation ("CRSC") benefits.

28. The APA allows a person seeking relief from a legal wrong caused by an agency action to obtain review in federal court. APA §§ 702, 704.

29. Under the APA, to the extent necessary to its decision, "the reviewing court shall decide all relevant questions of law, [and] interpret . . . statutory provisions." § 706.

30. In addition, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law." § 706(2)(A).

31. All documents referenced in this Complaint are publicly available, part of the administrative record before the ABCMR, or attached as an exhibit.

## III.     JURISDICTION AND VENUE

32. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question), 2201, and 2202 (declaratory and injunctive relief). SPC Rivera has a right to bring this action under 5 U.S.C. §§ 701-06 (judicial review of final agency action) and the Fifth Amendment of the U.S. Constitution.

33. Venue is proper in this Court because the Secretary of the Army is an officer of the United States and because a substantial part of the events or omissions giving rise to SPC Rivera's claims took place in the District of Columbia. 28 U.S.C. § 1391(e)(1). Venue is also proper under 5 U.S.C. § 703 because this is a court of competent jurisdiction.

34. In accordance with 28 U.S.C. § 2501, this action is brought within six years of the ABCMR's Final Decision, which it rendered August 1, 2024.

## IV.    PARTIES

35. The Plaintiff is SPC Rivera, a United States citizen who served honorably in the United States Army from April 1, 2002, to May 31, 2006. He was deployed in an imminent danger pay area as part of Operation Iraq Freedom from April 3, 2003, to April 5, 2004, and again from February 27, 2005, to November 8, 2005. During his war-zone duties, he was engaged in combat activities. As a result of his service, SPC Rivera received numerous awards, including the Army Achievement Medal, the Army Good Conduct Medal, the National Defense Service Medal, the Global War on Terrorism Expeditionary Medal, the Global War on Terrorism Service Medal, the Army Service Ribbon, the Overseas Service Ribbon, and the Iraq Campaign Medal.

36. Defendant Mark Averill is the Acting Secretary of the Army, and is named solely in his official capacity as head of the Department of the Army (the "Army"). 10 U.S.C. § 7013(a)(1). At all times relevant, the Acting Secretary of the Army acted by and through the ABCMR. § 1552(a)(1).

37. Defendant United States Department of the Army is an agency of the United States Government.

38. Defendant ABCMR is an agency of the United States Department of the Army, located in Arlington, Virginia. The ABCMR is the board established by the Secretary of the Army which, pursuant to 10 U.S.C. § 1552, considers applications filed before it for the purposes of

determining whether an applicant's Army military record should be changed to correct an error or injustice. The ABCMR is the highest administrative level of appeal within the Army.

## V. STATUTORY FRAMEWORK

### A. The CRSC Program

39. Congress established the CRSC program effective May 31, 2003, to provide special compensation to military retirees who have their retired pay reduced by reason of receiving disability compensation for combat-related disabilities from the Department of Veterans Affairs (the "VA"). *See* 10 U.S.C. § 1413a.

40. To be eligible for CRSC, an applicant must be: (1) a military retiree; (2) "entitled to retired pay" (except in circumstances not relevant here); (3) with "a combat-related disability." *Id*.

41. A "combat-related disability" is: (1) a disability that is compensable under the laws administered by the VA; and (2) was incurred (a) as a direct result of armed conflict, (b) while engaged in hazardous service, (c) in the performance of duty under conditions simulating war, or (d) through an instrumentality of war. § 1413a(e).

### B. Department of Defense CRSC Guidance

42. The CRSC statute requires the Secretary of the Department of Defense (the "DoD") to prescribe procedures and criteria under which eligible service members may apply to the Secretary of their respective military department for CRSC. § 1413a(d). The DoD CRSC Program Guidance (the "Program Guidance") must be "uniformly [applied] throughout the [DoD],"[2] which includes the Army. *Id.*

---

[2] The Program Guidance is available at:
https://militarypay.defense.gov/Portals/3/Documents/CRSC_Guidance_104.pdf (April 15, 2004).

43. The Program Guidance expressly recognizes that Post-Traumatic Stress Disorder ("PTSD") may qualify as a combat-related disability under § 1413a(e)(2). See Program Guidance, Attach. 1, at 6 (listing PTSD under the "Other Combat-Related Disabilities" heading).

44. Under the Program Guidance, CRSC determinations are based on a preponderance-of-the-evidence standard, "where quality of information is more important than quantity." *Id.* at 9.

45. Additionally, "[a]ll relevant documentary information is to be weighed in relation to known facts and circumstances, and determinations will be made on the basis of credible, objective documentary information in the records as distinguished from personal opinion, speculation, or conjecture." *Id*.

46. Regarding disabilities incurred as a direct result of armed conflict, the Program Guidance provides, in part:

> The disability is a disease or injury incurred in the line of duty as a direct result of armed conflict. The fact that a member incurred the disability during a period of war or an area of armed conflict while participating in combat operations is not sufficient to support a combat-related determination. There must be a definite and casual relationship between the armed conflict and the resulting disability.
>
> Armed conflict includes a war, expedition, occupation of an area or territory, battle, skirmish, raid, invasion, rebellion, insurrection, guerilla action riot, or any other action in which Service members are engaged with a hostile or belligerent nation, faction, force, or terrorists.

Program Guidance, Attach 1-1, at 1.

47. Regarding disabilities incurred through an instrumentality of war, the Program Guidance provides that "[i]ncurrence during an actual period of war is not required. However, there must be a direct causal relationship between the instrumentality of war and the disability. The disability must be incurred incident to a harm or risk of the service." *Id.* This means that the instrumentality of war must be the proximate cause of the disability, as the Program Guidance demonstrates:

> For example, if a member is on a field exercise and is engaged in a sporting activity and falls and strikes an armored vehicle, the injury will not be considered to result from the instrumentality of war (armored vehicle) because it was the sporting activity that was the cause of the injury, not the vehicle. On the other hand, if the individual was engaged in the same sporting activity and the armored vehicle struck the member, the injury would be considered the result of an instrumentality of war.

*Id.* at 2.

48. The Program Guidance defines an "instrumentality of war" as "a vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence or injury." *Id.* "It may also include such instrumentalities not designed primarily for Military Service if use of or occurrence involving such instrumentality subjects the individual to a hazard peculiar to Military Service. Such use or occurrence differs from the use or occurrence under similar circumstances in civilian pursuits." *Id.*

**C.     The Role of Advisory Opinions in CRSC Cases**

49. The appropriate Board for Correction of Military Records (the "BCMR") must share with the CRSC applicant a copy of all correspondence and communications, including advisory opinions, that are germane to the applicant's case. 10 U.S.C. § 1556(a).

50. Under the preponderance of the evidence standard, the BCMR must consider all submitted arguments and evidence, which would include a response to the advisory opinion and new exhibits submitted with that response.

51. The BCMR must thereafter consider the advisory opinion and any response by the applicant, together with the remainder of the record evidence, before making its own final decision in this matter. 10 U.S.C. §§ 1413a, 1552.

11

## VI.   COUNT ONE

### (Failure to Consider SPC Rivera's Response to the Advisory Opinion)

52. SPC Rivera re-alleges and incorporates by reference all the allegations contained in Paragraphs 1 through 49 above as if fully set forth herein.

53. The Final Decision was irrefutably flawed because the ABCMR failed to consider SPC Rivera's response to the Advisory Opinion and MAJ Royal's statement. Under the Program Guidance, "[a]ll relevant documentary information is to be weighed in relation to known facts and circumstances." Program Guidance, Attach. 1, at 9. The ABCMR failed to consider all relevant documentary information when it ignored the Advisory Opinion Response and the two new exhibits: MAJ Royal's statement and the similar ABCMR decision.

54. The ABCMR's Final Decision expressly accepts the Advisory Opinion's finding that SPC Rivera had not provided sufficient evidence to show he was personally exposed to armed conflict, without accounting for SPC Rivera's response to the Advisory Opinion. In doing so, the ABCMR failed to consider all the evidence before it. The ABCMR thus acted in an arbitrary and capricious manner. *See Nat'l Envt. Dev. Ass'n Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("[A]n agency action may be set aside as arbitrary and capricious if the agency fails to 'comply with its own regulations.'" (citation omitted)).

## VII.   COUNT TWO

### (Use of Incorrect Legal Standards/Substantial Evidence)

55. SPC Rivera re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 52 as if fully set forth herein.

56. Both the statute and the Program Guidance define "combat-related disability" as a disability that was "incurred" "as a direct result of armed conflict" or "through an instrumentality of war." 10 U.S.C. § 1413a(e)(2)(A), (D); Program Guidance, Attach. 1, at 6. The Program

Guidance elaborates that "direct result of armed conflict" means that the disability was "incurred in the line of duty" with "a definite causal relationship between the armed conflict and the resulting disability." Program Guidance, Attach. 1-1, at 1. The CRSC applicant must satisfy these requirements by a preponderance of the evidence. Program Guidance, Attach. 1, at 9 (meeting the preponderance-of-evidence standard requires the applicant to show that they more likely than not meet the requirements).

57. The PEB concluded, after considering all of the evidence before it, that SPC Rivera's disability was combat-related. The PEB's findings are an analysis of commissioned officers who reviewed all available evidence in SPC Rivera's personnel and medical files.

58. Neither the statute nor the Program Guidance suggest that the PEB's findings cannot be used as official evidence to substantiate the causal link between the disability and armed conflict. The PEB found that SPC Rivera was physically unfit by reason of PTSD attributed to combat stressors encountered during his tour of service.

59. Nevertheless, the ABCMR found that SPC Rivera had not shown his injuries were combat-related, effectively ignoring the PEB's finding. It did so despite not citing any evidence, or making any findings, that cast doubt on the PEB's conclusion.

60. The ABCMR had no basis to determine that the PEB's finding that SPC Rivera's disability was combat related was incorrect or not supported by sufficient evidence. Thus, the ABCMR's failure to accept the PEB's determination as objective conclusive evidence that SPC Rivera's disability was combat related not supported by substantial evidence and was arbitrary and capricious. 5 U.S.C. §§ 706(2)(E).

61. The ABCMR's refusal to follow analogous and recent CRSC decisions from within the DoD, or to otherwise explain why those decisions are inapposite, was arbitrary and capricious.

*See* 10 U.S.C. § 1413a(d) (requiring uniform application of the Program Guidance throughout the DoD); *Nat'l Envt. Dev. Ass'n Clean Air Project*, 752 F.3d at 1009-11 (holding that the EPA acted arbitrarily and capriciously by applying the law differently across the country despite its own regulation requiring national uniformity); *see also Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (explaining that, while courts "do not require an agency to grapple with every last one of its precedents," they "have never approved an agency's decision to completely ignore relevant precedent"); *Bush-Quayle '92 Primary Comm., Inc. v. FEC*, 104 F.3d 448, 454 (D.C. Cir. 1997) (similar).

## VIII. PRAYER FOR RELIEF

WHEREFORE, SPC Rivera prays that the Court issue an Order:

A. Declaring that the ABCMR's denial of SPC Rivera's application for CRSC benefits was arbitrary and capricious, an abuse of discretion, and not in accordance with the law under the APA;

B. Vacating and remanding the ABCMR's decision with instructions to:

    i. consider all the documentation before it, and specifically SPC Rivera's response to the Advisory Opinion and MAJ Royal's statement;

    ii. apply the proper legal standard in assessing SPC Rivera's case; and

    iii. provide an updated ABCMR decision within 120 days of the remand order.

C. Award his costs and attorneys' fees; and

D. Granting other relief as the Court deems just and proper.

Dated:  February 6, 2025	Respectfully submitted,

/s/ *Kevin E. Gaunt*
Kevin E. Gaunt (DC Bar No. 1008697)
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue NW
Washington, D.C. 20037
Phone: (202)419-2182
KGaunt@HuntonAK.com

Rochelle Bobroff (DC Bar No. 420892)
Lawyers Serving Warriors,
Pro Bono Program of the
National Veterans Legal Services Program
1100 Wilson Boulevard, Suite 900
Arlington, Virginia 22209
Phone: (202) 621-5709
Rochelle@nvlsp.org

*Counsel for Specialist Ricardo H. Rivera (Ret.)*